U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 MAY -8 AM 10: 56

CLERK

BY CDC
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL CONNEH, a.k.a. "Polo" and "Rickey Rozay,"<br>Defendant. | Docket No. 2:24-CR-98-2 |

PLEA AGREEMENT

The United States of America, by and through the United States Attorney's Office for the District of Vermont (hereafter "the United States"), and the defendant, PAUL CONNEH, a.k.a. "Polo" and "Rickey Rozay," agree to the following in regard to the disposition of pending criminal charges.

1. PAUL CONNEH agrees to plead guilty to Counts One and Two of the Indictment charging him with wire fraud conspiracy, in violation of 18 U.S.C. §§ 1349, 1343, and money laundering conspiracy, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(2)(A), 1956(a)(2)(B)(i), 1957(a)).

2. PAUL CONNEH understands, agrees and has had explained to him by counsel that the Court may impose the following sentence on his plea:

   a. On Count One, up to 20 years of imprisonment, pursuant to 18 U.S.C. §§ 1349, 1343; up to three years of supervised release, pursuant to 18 U.S.C. § 3583(b)(2); up to a $250,000 fine, pursuant to 18 U.S.C. § 3571(b)(3); and a $100 special assessment. PAUL CONNEH further understands that the Court must order full restitution to the victims of the offense in an amount determined by the Court, pursuant to 18 U.S.C. § 3663A.

b. On Count Two, up to 20 years of imprisonment, pursuant to 18 U.S.C. §§ 1956(h) and 1956(a); a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, pursuant to 18 U.S.C. §§ 1956(h) and 1956(a)(1); up to three years of supervised release, pursuant to 18 U.S.C. § 3583(b)(2), and a $100 special assessment. PAUL CONNEH further understands that the Court must order full restitution to the victims of the offense in an amount determined by the Court, pursuant to 18 U.S.C. § 3663A.

3. PAUL CONNEH agrees to plead guilty because he is, in fact, guilty of the above crime.

4. PAUL CONNEH stipulates to, agrees with, and admits the following facts:

a. In 2023, Phillipe Alvarez approached PAUL CONNEH and explained that he was looking for someone who could pick up money in the United States. PAUL CONNEH eventually became aware that the money to be picked up was the proceeds of a "grandparent scam." PAUL CONNEH understood that scams are pervasive in Montreal, Quebec, and that individuals who participate in the grandparent scam are viewed as immoral and unscrupulous as compared to participation in bank scams, credit card scams, and wire transfer scams. PAUL CONNEH understood that the grandparent scam involved "call centers" that obtained "leads" (personal identifying information of elderly individual in the United States) as well as individuals who traveled within the United States to pick up money from elderly victims. PAUL CONNEH was further aware that Philippe Alvarez's cousin (Jean Richard Audate, a.k.a. "Shin") was previously arrested in the United States for participating in this grandparent scam.

b. PAUL CONNEH contacted a friend, Individual #1, and asked if he knew anyone who could pick up money in the United States. Individual #1 said he knew someone, Individual #2, who could pick up money in the United States. The conspirators believed that Individual #2 was an ideal person to participate in this scheme due to his physical appearance, ability to speak English, and ability to gain admission to the United States. Individual #2 agreed to pick up money in the United States. PAUL CONNEH was aware that others, aside from Individual #2, were also picking up money in the United States pursuant to the same scheme.

c. To perpetrate the grandparent scam, Phillipe Alvarez – who utilized the codename "Jimmy Tea" – communicated with the call centers and received information about elderly victims – including names, addresses, and amounts of money to be picked up). PAUL CONNEH – who utilized the codenames "Polo" and "Rickey Rozay" – was responsible for coordinating with Individual #2. PAUL CONNEH was also responsible for facilitating communication between Philippe Alvarez, Individual #1, and Individual #2. To do so, PAUL CONNEH created a "group chat" within the Telegram messaging application, through which Philippe Alvarez relayed "orders" and victim information to Individual #2. Individual #1 was responsible for creating ledgers detailing the amount of money picked up by Individual #1.

d. During July and August 2023, Individual #2 traveled from Canada to Rhode Island, Vermont, and Maine for purposes of perpetrating the grandparent scam. Individual #2 took approximately $173,000 from elderly victims in Rhode Island, approximately $155,000 from elderly victims in Vermont, and approximately $80,000 from elderly victims in Maine. The $80,000 taken from elderly victims in

Maine was seized by law enforcement. PAUL CONNEH and Phillippe Alvarez subsequently spoke to Individual #2 by phone about the circumstances of law enforcement's seizure of the $80,000.

e. After picking up money in Rhode Island and Vermont, Philippe Alvarez directed Individual #2, as well as Individual #3, to deliver the money to Jean Richard Audate, sometimes in New York. Jean Richard Audate then delivered the money to a cryptocurrency exchanger who took the money and sent an equivalent amount of cryptocurrency to Philippe Alvarez in Canada.

f. When Philippe Alvarez received the proceeds of the grandparent scam, he provided some of the funds to PAUL CONNEH. PAUL CONNEH retained some of these funds as compensation for his participation in the grandparent scam. PAUL CONNEH was responsible for paying Individual #1, Individual #2, and Individual #3. To do so, co-conspirators purchased pre-paid debit cards with the funds provided by Philippe Alvarez, then loaded the debit card numbers into PayPal accounts that the conspirators had created using fake names. PAUL CONNEH then paid Individual #1, Individual #2, and Individual #3 through these PayPal accounts. On one occasion, the conspirators arranged for Philippe Alvarez to pay Individual #2 in cash in Montreal, Quebec.

5. PAUL CONNEH understands that it is a condition of this agreement that he refrain from committing any further crimes, whether federal, state or local, and that if on release he will abide by all conditions of release.

6. PAUL CONNEH acknowledges that he understands the nature of the charges to which he will plead guilty and the possible penalties. He also acknowledges that he has the following rights:

the right to persist in a plea of not guilty; the right to a jury trial; the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceeding; the right at trial to confront and cross-examine adverse witnesses; the right to be protected from compelled self-incrimination; and the right to testify and present evidence and to compel the attendance of witnesses. He understands that by pleading guilty, he will waive these rights. He also understands that if his guilty plea is accepted by the Court, there will be no trial and the question of guilt will be resolved; all that will remain will be the Court's imposition of sentence.

7. PAUL CONNEH fully understands that he may not withdraw his plea because the Court declines to follow any recommendation, motion or stipulation of the parties to this agreement, other than an agreement between the parties pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The United States specifically reserves the right to allocute at sentencing. There shall be no limit on the information the United States may present to the Court and the Probation Office relevant to sentencing and no limit (except as otherwise provided in this agreement) on the positions the government may take at sentencing. Both parties are free to move for a departure under the Guidelines and to argue for a sentence outside the advisory sentencing range, except as otherwise set forth in this agreement. The United States also reserves the right to correct any misstatement of fact made during the sentencing process, to oppose any motion to withdraw a plea of guilty, and to support on appeal any decisions of the sentencing Court whether in agreement or in conflict with recommendations and stipulations of the parties.

8. PAUL CONNEH fully understands that any estimates or predictions relative to the Guidelines calculations are not binding upon the Court. PAUL CONNEH acknowledges that there is no agreement between the parties as to both the calculation of the offense level and his criminal

history category. PAUL CONNEH understands his criminal history could impact both the offense level and the criminal history category applicable to his Guideline calculation. He fully understands that the Guidelines are advisory and that the Court can consider any and all information that it deems relevant to the sentencing determination. He acknowledges that in the event that any estimates or predictions by his attorney (or anyone else) are erroneous, those erroneous predictions will not provide grounds for withdrawal of his plea of guilty, modification of his sentence, or for appellate or post-conviction relief.

9. PAUL CONNEH agrees to make a good-faith effort to pay any fine or restitution he is ordered to pay. PAUL CONNEH agrees to pay the special assessment at the time of sentencing.

10. PAUL CONNEH agrees to the following regarding restitution in this case:

a. PAUL CONNEH agrees to pay full restitution for all losses caused by all the schemes or offenses with which he was charged in this case, and he understands that, pursuant to 18 U.S.C. § 3663(a)(3), the amount of restitution will not be limited to the loss attributable to the counts to which he is pleading guilty.

b. PAUL CONNEH understands that the Court will not consider his economic circumstances in determining the restitution amount. PAUL CONNEH agrees to pay restitution in an amount to be set by the Court when ordered, but in no event less than $256,000, and potentially as much as $408,000, based on information known to the parties at this time, and may be higher depending on evidence available at the time of sentencing.

c. PAUL CONNEH understands that the restitution described above creates a lien in favor of the United States on all property and rights to property he may possess upon entry of judgment and continues for the later of 20 years from the entry of

judgment or 20 years after release from imprisonment or until the debt is paid in full. PAUL CONNEH further understands the government will record a notice of the lien in any county where he resides or has property. PAUL CONNEH further understands that this order of restitution cannot be discharged in bankruptcy and that if he defaults on the payment of restitution, the Court may revoke probation or a term of supervised release, modify the terms or conditions of probation or supervised release, resentence him, hold him in contempt of court, order the sale of property, enter or adjust a payment schedule, or take any other action necessary to obtain compliance.

d. At any time before or after a judgment is entered in this case and until the financial obligation is paid in full, PAUL CONNEH agrees to complete, under penalty of perjury, a financial statement provided by the United States, and provide supporting documents, and to update that statement with material changes within seven days of the change. PAUL CONNEH understands that he must identify all assets and financial interests valued at more than $1,000. PAUL CONNEH further understands that these assets and financial interests include all assets and financial interests in which he has an interest, direct or indirect, whether held in his own name or in the name of another, in any property, real or personal. PAUL CONNEH expressly authorizes the United States to obtain a credit report on him at any time before or after sentencing in order to evaluate his ability to satisfy any financial obligation imposed by the Court.

e. PAUL CONNEH agrees to surrender assets he obtained as a result of his crimes, and release funds and property under his control to pay any restitution. PAUL

CONNEH further agrees to notify the United States before transferring any interest in property owned directly or indirectly by him, including any interest held or owned under any other name or entity, including trusts, partnerships, and/or corporations. PAUL CONNEH also agrees to notify the United States of any interest in property he may obtain, directly or indirectly, which is valued at more than $1,000, and which includes any interest obtained under any other name, or entity, including a trust, partnership, or corporation, after the execution of this Plea Agreement until the restitution is paid in full. PAUL CONNEH understands that his disclosure obligations are ongoing and are in force from the execution of this agreement until PAUL CONNEH has satisfied the restitution order in full.

f. PAUL CONNEH agrees that any fine or restitution imposed by the Court against him will be due immediately and subject to immediate enforcement by the government as authorized by 18 U.S.C. § 3613. In the event that the Court imposes a schedule for payment of restitution, PAUL CONNEH agrees that such a schedule represents a minimum payment obligation and does not preclude the United States from pursuing any other means by which to satisfy his full and immediately enforceable financial obligation. PAUL CONNEH further understands that the government may seek immediate collection of the entire restitution from any assets without regard to any schedule of payments imposed by the Court or established by the Probation Office, and that monetary penalties imposed by the Court will be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property he receives may be offset and applied to federal debts. PAUL

CONNEH understands that he has a continuing obligation to pay in full as soon as possible any financial obligation imposed by the Court.

11. PAUL CONNEH recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. PAUL CONNEH, if not a United States citizen, may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Removal and other immigration consequences are the subject of a separate proceeding, however, and he understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. PAUL CONNEH nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

12. PAUL CONNEH agrees, pursuant to 18 U.S.C. § 3663(a)(3), to pay restitution to the individuals identified in Attachment A, in the aggregate amount of $256,000, which will be payable at the time of sentencing. PAUL CONNEH agrees to pay any additional restitution up to a total amount of $408,000.

13. The United States agrees that in the event that PAUL CONNEH fully and completely abides by all conditions of this agreement, the United States will:

a. not file additional federal charges in the District of Vermont based on the conduct described in the factual stipulations at paragraph 4, for violations of 18 U.S.C. §§ 1349, 1343;1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(2)(A), 1956(a)(2)(B)(i), 1957(a), during July and August 2023, committed by him in District of Vermont;

b. recommend that he receive a two-point credit for acceptance of responsibility under Guideline § 3E1.1(a), provided that (1) he cooperates truthfully and completely with the Probation Office during the presentence investigation, including truthfully admitting the conduct comprising the offense(s) of conviction and not falsely denying any relevant conduct for which he is accountable under U.S.S.G. § 1B1.3, (2) he abides by the conditions of his release, and (3) provided that no new information comes to the attention of the United States relative to the issue of his receiving credit for acceptance of responsibility; and

c. move for an additional one-point credit for timely acceptance of responsibility, if the offense level (before acceptance) is 16 or greater and he meets the conditions in the subparagraph above.

14. If the United States determines, in its sole discretion, that PAUL CONNEH has committed any offense after the date of this agreement, has violated any condition of release, or has provided any intentionally false information to Probation, the obligations of the United States in this agreement will be void. The United States will have the right to recommend that the Court impose any sentence authorized by law and will have the right to prosecute him for any other offenses he may have committed in the District of Vermont. PAUL CONNEH understands and agrees that, under such circumstances, he will have no right to withdraw his previously entered plea of guilty.

15. It is understood and agreed by the parties that should PAUL CONNEH's plea not be accepted by the Court for whatever reason, or later be withdrawn or vacated, this agreement may be voided at the option of the United States and he may be prosecuted for any and all offenses otherwise permissible. PAUL CONNEH also agrees that the statute of limitations for all uncharged criminal offenses known to the United States as of the date it signs this plea agreement

will be tolled for the entire period of time that elapses between the signing of this agreement and the completion of the period for timely filing a petition under 28 U.S.C. § 2255, or if such petition is filed, the date of any decision by a court to vacate the plea or the conviction.

16. It is further understood that this agreement is limited to the Office of the United States Attorney for the District of Vermont and cannot bind other federal, state or local prosecuting authorities.

17. PAUL CONNEH expressly states that he makes this agreement of his own free will, with full knowledge and understanding of the agreement and with the advice and assistance of his counsel, Chandler Matson, Esq. PAUL CONNEH further states that his plea of guilty is not the result of any threats or of any promises beyond the provisions of this agreement. Furthermore, PAUL CONNEH expressly states that he is fully satisfied with the representation provided by his attorney, Chandler Matson, Esq., and has had full opportunity to consult with his attorney concerning this agreement, concerning the applicability and impact of the Sentencing Guidelines (including, but not limited to, the relevant conduct provisions of Guideline Section 1B1.3), and concerning the potential terms and conditions of supervised release.

18. No agreements have been made by the parties or their counsel other than those contained herein or in any written agreement supplementing this agreement.

UNITED STATES OF AMERICA

JONATHAN A. OPHARDT
First Assistant United States Attorney

05/08/2026
Date

MICHELLE ARRA
NATHANAEL T. BURRIS
Assistant United States Attorneys

05/05/2026
Date

PAUL CONNEH
Defendant

I have read, fully reviewed and explained this agreement to my client, PAUL CONNEH. I believe that he understands the agreement and is entering into the agreement voluntarily and knowingly.

5-5-2026
Date

CHANDLER MATSON
Counsel for the Defendant